## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

SHAWN JONES,

       Plaintiff,

       v.

SGT. BOONE, et al.,

       Defendants.

CIVIL ACTION NO. 3:21-CV-01977

(MEHALCHICK, M.J.)

### <u>MEMORANDUM</u>

This is a civil rights action initiated upon the filing of the complaint by Plaintiff, Shawn Jones ("Jones"), against Sergeant Boone ("Sgt. Boone") and Corrections Officer Smitty (C.O. Smitty) (collectively, "Defendants"), on November 19, 2021. (Doc. 1). In his complaint, Jones asserts claims under 42 U.S.C § 1983, alleging that (1) Defendants denied him medical care in violation of the Eighth Amendment, and (2) retaliated against him for disrespecting Nurse Stallman by allowing an inmate to attack him in his cell and filing a false misconduct charge. (Doc. 1, at 4). As relief, Jones seeks compensatory and punitive damages. (Doc. 1, at 5). On February 14, 2022, Defendants filed an answer to the complaint. (Doc. 10). On February 24, 2022, the parties consented to proceed before the undersigned United States Magistrate Judge pursuant to Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). (Doc. 12).

Before the Court are cross-motions for summary judgment filed by Jones and Defendants. (Doc. 16; Doc. 22). For the reasons stated herein, Defendants' motion for summary judgment will be **GRANTED** and Jones's cross-motion for summary judgment will be **DENIED**.

## I.   BACKGROUND AND PROCEDURAL HISTORY

This factual background is taken from Defendants' statements of material facts. (Doc. 17). Jones has failed to file a response or a separate statement of material facts pursuant to Local Rule 56.1. Because Jones is proceedings *pro se* and the Court is required to liberally construe his pleadings, the Court will, to the best of its ability, review the record to assess Jones's assertions stated in his motion for summary judgment and briefs in opposition as they relate to Defendants' statement of facts. (Doc. 18; Doc. 22; Doc. 23; Doc. 24; Doc. 25; Doc. 26); *see, e.g., Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-46 (3d Cir. 2013). Pursuant to Local Rule 56.1, the Court accepts as true all undisputed material facts supported by the record. Where the record evinces a disputed fact, the Court will take notice. In addition, the facts have been taken in the light most favorable to the non-moving party with respect to each motion.

### A.   PROCEDURAL HISTORY

On November 19, 2021, Jones initiated this action by filing a *pro se* complaint alleging claims pursuant to 42 U.S.C. § 1983. (Doc. 1). On February 14, 2022, Defendants filed an answer to Jones's complaint. (Doc. 10). On June 18, 2022, Defendants filed a motion for summary judgment, as well as a brief in support, statement of facts, and appendix of exhibits. (Doc. 16; Doc. 17; Doc. 18). On June 18, 2022, Defendants filed a motion for leave to file two exhibits under seal, which the Court granted on June 22, 2022. (Doc. 19; Doc. 20; Doc. 21). On June 30, 2022, Jones filed a motion for summary judgment. (Doc. 22). On July 13, 2022, Jones filed a brief in opposition to Defendants' motion for summary judgment and an

additional brief in opposition on August 11, 2022.[1] (Doc. 23; Doc. 26). On July 21, 2022, Defendants filed a brief in opposition to Jones's motion for summary judgment. (Doc. 25).

The cross motions for summary judgment have been fully briefed and are now ripe for disposition. (Doc. 16; Doc. 17; Doc. 18; Doc. 20; Doc. 22; Doc. 23; Doc. 24; Doc. 25; Doc. 26).

B.  STATEMENT OF MATERIAL FACTS

Jones was incarcerated on a FB Block at SCI-Benner Township, a general population block, from March 20, 2021, until April 14, 2021. (Doc. 17, ¶ 1; Doc. 17-1). While on FB Block, Jones received medical care from medical professionals at least two to three times a day between March 20, 2021, and April 14, 2021. (Doc. 17, ¶ 2; Doc. 20, at 3-9, 11-17). C.O. Smitty worked the 6:00-2:00 p.m. shift on FB Block at SCI-Benner Township. (Doc. 17, ¶ 3; Doc. 17-4; Doc. 17-5). Sgt. Boone worked the 6:00-2:00 p.m. shift on FB Block at SCI Benner Township. (Doc. 17, ¶ 4; Doc. 17-4; Doc. 17-5).

Jones filed only one inmate grievance between March 20, 2021, and April 14, 2021—inmate grievance number 923078. (Doc. 17, ¶ 5; Doc. 17-6). On April 5, 2021, Jones filed

---

[1] Jones filed an additional brief in opposition on August 11, 2022. (Doc. 26). The second brief is materially similar to his first brief in opposition. Because the second brief is filed in violation of the Local Rule 7.7, which precludes the filing of brief beyond the brief in support, brief in opposition, and reply brief, the Court references the brief in opposition deemed permissibly filed and disregards the additional brief in opposition. *See Gelbutis v. Shenandoah Police Dep't*, No. 3:17-CV-01057, 2018 WL 4214413, at *2 (M.D. Pa. Aug. 6, 2018), *report and recommendation adopted*, No. 3:17CV1057, 2018 WL 4088058 (M.D. Pa. Aug. 27, 2018) (referencing the brief in opposition deemed permissibly filed where plaintiff filed additional brief in opposition without leave of Court). However, this Court has reviewed Jones's additional brief, in view of his *pro se* status, and notes that Jones's arguments do not overcome this Court's decision to dismiss the case the reasons set forth below.

3

inmate grievance number 923078, seeking to complete an inmate program. (Doc. 17, ¶ 6; Doc. 17-11).

On April 14, 2021, C.O. Smitty filed inmate misconduct number D568762 against Jones for "threatening an employee or their family with bodily harm," "refusing to obey an order," and "presence in an unauthorized area." (Doc. 17, ¶ 7; Doc. 17-8, at 3). A hearing examiner held a disciplinary hearing regarding misconduct number D568762 on April 15, 2021. (Doc. 17, ¶ 8; Doc. 17-8, at 2). Jones pled guilty to two of the inmate charges, and not guilty to the charge of threatening an employee or other family with bodily harm. (Doc. 17, ¶ 9; Doc. 17-8, at 2). After the conclusion of the hearing and hearing Jones's testimony, the hearing examiner found Jones guilty of the two misconduct charges to which he pled guilty and dismissed the charge to which he pled not guilty. (Doc. 17, ¶ 10; Doc. 17-8, at 2). Jones did not appeal the hearing examiner's determination. (Doc. 17, ¶ 11; Doc. 17-9, at 2).

On March 3, 2021, Jones filed inmate grievance number 917533, seeking a refund to his account. (Doc. 17, ¶ 12; Doc. 17-10). On May 7, 2021, Jones filed inmate grievance number 927287, seeking an update on the status of an economic impact payment to his account. (Doc. 17, ¶ 13; Doc. 17-12). On June 19, 2021, Jones filed inmate grievance number 932265, raising complaints regarding the denial of a shower in June 2021. (Doc. 17, ¶ 14; Doc. 17-13). On June 19, 2021, Jones also filed inmate grievance number 932277, raising complaints regarding issues on HA Block. (Doc. 17, ¶ 15; Doc. 17-14).

## II.   Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might

affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Courts may resolve cross-motions for summary judgment concurrently. *See Lawrence v. City of Philadelphia*, 527 F.3d 299, 310 (3d Cir. 2008). When doing so, the court is bound to view the evidence in the light most favorable to the nonmovant with respect to each motion. *See Lawrence*, 527 F.3d at 310 (citation omitted). In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000). The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore*, 24 F.3d at

512. "The party moving for summary judgment bears the initial burden of showing the basis for its motion . . . [and i]f the movant meets that burden, the onus then 'shifts to the non-moving party to set forth specific facts showing the existence of [a genuine issue of material fact] for trial.'" *Triad Controls, Inc.*, 593 F. Supp. 2d 741, 749 (E.D. Pa. 2009) (citing *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir.2001)). "Although the party opposing summary judgment is entitled to the 'benefit of all factual inferences in the court's consideration of a motion for summary judgment, the nonmoving party must point to some evidence in the record that creates a genuine issue of material fact.'"[2] *Velentzas v. U.S.*, No. 4: CV -07-1255, 2010 WL 3896192, *7 (M.D. Pa. August 31, 2010) (quoting *Goode v. Nash,* 241 F. App'x 868, 869 (3d Cir. 2007) (citation omitted). The opposing party "cannot rest solely on assertions made in the pleadings, legal memorandum, or oral argument." *Goode,* 241 F. App'x at 869 (quoting *Berckeley Inv. Grp., Ltd. V. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006)). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986); *Jakimas v. Hoffmann–La Roche, Inc.,* 485 F.3d 770, 777 (3d Cir.2007). Further, "[t]he mere existence of some evidence in support of the nonmovant is insufficient to deny a motion for summary judgment; enough evidence must exist to enable a jury to reasonably find for the nonmovant

---

[2] See also *Beenick v. LeFebvre*, 684 F. App'x 200, 206 (3d Cir. 2017) (stating the purpose of requiring parties to cite to particular parts of the record in their briefs about a motion for summary judgment is to "assist the court in locating materials buried in a voluminous record") (quoting Fed. R. Civ. P. 56(c)(1)(A)).

on the issue." *Turco v. City of Englewood, N.J.*, 935 F.3d 155, 161 (3d Cir. 2019) (citing *Kelly v. Borough of Carlisle*, 622 F.3d 248, 253 (3d Cir. 2010)).

### III.   DISCUSSION

#### A.   JONES'S MOTION FOR SUMMARY JUDGMENT

In Jones's motion for summary judgment, Jones argues that Defendants and their counsel have acted "in bad faith" by failing to disclose to the Court a prior Pennsylvania Commonwealth Court decision, *Commonwealth ex rel. Vance v. Beard,* No. 592 M.D. 2006, 2008 WL 9406009, at *1 (Pa. Commw. Ct. May 12, 2008), and have, therefore, committed fraud upon the Court. (Doc. 22, ¶¶ 2-3, 6).  In addition, Jones contends Defendants' counsel violated her ethical responsibilities as a Deputy Attorney General. (Doc. 22, ¶¶ 2-3, 6). Jones cites *Herring v. United States*, 424 F.3d 384 (3d Cir. 2005), to provide the standard for evaluating when fraud is committed upon the Court. (Doc. 22,  ¶¶ 4-6). Furthermore, Jones requests that the Court issue sanctions as a result of Defendants' "disingenuous lack of candor to *pro se* plaintiff, and this honorable Court, should shock the conscious." (Doc. 22, ¶ 7).

In opposition, Defendants argue Jones's motion should be denied for failure to comply with Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1 as Jones has failed to file a statement of material facts with supporting exhibits contemporaneously with his motion. (Doc. 25, at 2-3). Furthermore, Defendants assert that Jones has also failed to file a brief in support of his motion for summary judgment within fourteen days after filing the motion as required by L.R. 7.5. (Doc. 25, at 2; Doc. 22; Doc. 23). Alternatively, Defendants argue Jones is not entitled to summary judgment because Defendants have not committed fraud upon the Court and sanctions are inappropriate. (Doc. 25, at 4-7).

Jones has failed to file a statement of material facts with appropriate record citations in support of his motion in violation of the Middle District of Pennsylvania Local Rule of Court 56.1, Local Rule 56.1 provides, in relevant part:

> A motion for summary judgment filed pursuant to Fed.R.Civ.P.56, shall be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried.
>
> * * *
>
> Statements of material facts in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements.

The requirement of a statement of undisputed material facts, as provided for in Local Rule 56.1, is consistent with Federal Rule of Civil Procedure 56, which requires the movant to show that there are no genuine issues of material fact for trial. *UBA v. Mackrell*, No. 3:10-CV-1465, 2011 WL 6782955 (M.D. Pa. Dec. 21, 2011). Moreover, the purpose of the factual statements required by Local Rule 56.1 is not insignificant:

> These statements are not merely superfluous abstracts of the evidence. Rather, they are intended to alert the court to precisely what factual questions are in dispute and point the court to the specific evidence in the record that supports a party's position on each of these questions. They are, in short, roadmaps, and without them, the court should not have to proceed further, regardless of how readily it might be able to distill the relevant information from the record on its own.

Defendants have raised Jones's failure to comply with the requirements of L.R. 56.1 in its opposing brief. (Doc. 25). While Jones has filed a brief in opposition and an additional brief in opposition to Defendants' motion for summary judgment, he has not attempted to address any deficiencies in his own filings. (Doc. 23; Doc. 25).

Accordingly, Jones's motion for summary judgment will be **DISMISSED** for his failure to comply with the requirements of L.R. 56.1.

8

B. Defendants' Motion for Summary Judgment

Defendants move for summary judgment on the following grounds: (1) Jones has failed to exhaust his administrative remedies with respect to all claims prior to filing the suit; (2) Jones's claims against state officials named within their "official capacity" are barred by the Eleventh Amendment; (3) Jones's Eighth Amendment claims fail because Defendants were not personally involved in Jones's medical care and the record demonstrates that he saw medical personnel at least 2-3 times per day; and (4) Jones's First Amendment retaliation claim fails because disrespecting another person is not protected conduct. (Doc. 18). In opposition, Jones argues: (1) the doctrine of *res judicata* prevents entry of judgment on behalf of Defendants; (2) the Pennsylvania Supreme Court decision, *McCray v. Dep't of Corrs.*, 872 A.2d 1127 (Pa. 2005), prohibits the doctrine of exhaustion; (3) Defendants are subject to a federal due process claim because they were not forthright with the court under precedent in *Dunbar v. Wetzel*, 222 A.3d 1244 (Pa. Commw. Ct. Jan. 21, 2020); and (4) the medical report documents submitted by Defendants are irrelevant to this case. (Doc. 23, at 1-3).

1. **Exhaustion of Administrative Remedies**

Defendants submit they are entitled to summary judgment because Jones has failed to exhaust his administrative remedies with respect to all claims prior to filing suit in violation of the Prisoner Litigation Reform Act ("PLRA"). (Doc. 18, at 4-7). Specifically, Defendants argue that Jones has failed to properly file any of the claims asserted in this litigation because he never filed an inmate grievance related to his underlying claims, nor appealed any grievance to the Secretary's Office of Inmate Grievance and Appeals ("SOIGA") and that the grievance filed during the relevant time period in question, March 2021 and April 2021, is irrelevant to his claims because it grieved issues surrounding Jones's competition of the

inmate program. (Doc. 18, at 5). In opposition, Jones argues that the doctrine of exhaustion is prohibited by the Pennsylvania Supreme Court in the decision of *McCray*, 872 A.2d 1127. (Doc. 23, at 2-3). Specifically, Jones avers that in the *McCray* decision, the Pennsylvania Supreme Court held that it was disingenuous for the Department of Corrections ("DOC") to argue exhaustion when the grievance policy was not authorized to address legal matters of a court of law. (Doc. 23, at 3).

The PLRA requires inmates to exhaust administrative remedies, *i.e.* the prison grievance process, prior to bringing a federal lawsuit to challenge prison conditions. 42 U.S.C. § 1997(e)(a); *see Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016); *Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000) ("[I]t is beyond the power of this court—or any other—to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis."). This mandatory language "means a court may not excuse a failure to exhaust, even to take such circumstances into account. *See Miller v. French*, 530 U.S. 327, 337 (2000).(explaining that "[t]he mandatory 'shall' ... normally creates an obligation impervious to judicial discretion")." *Miller*, 530 U.S. at 1856-57. "Of course, exhaustion applies only when administrative remedies are 'available.'" *Shifflett v. Korszniak,* 934 F.3d 356, 365 (3d Cir. 2019). Under certain circumstances, a nominally extant prison grievance policy is not truly an "available" remedy. A remedy is unavailable "when the procedure 'operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates," where it is "so opaque that it becomes, practically speaking, incapable of use,' or 'when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Shifflett,* 934 F.3d at 365 (quoting *Ross*, 136 S. Ct. at 1859-60).

10

The PLRA mandates that an inmate "properly" exhaust administrative remedies before filing suit in federal court, which demands compliance with an agency's deadlines and other procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 92 (2006); *Spruill v. Gillis*, 372 F.3d 218, 230 (3d Cir. 2004) (concluding that the PLRA includes a procedural default component); *Rivera v. Pa. Dep't of Corr.*, 388 F. App'x 107, 108 (3d Cir. 2010) (stating "[a]n inmate must exhaust his administrative remedies prior to filing a civil action in federal court."). Inmates who fail to fully, or timely, complete the prison grievance process, or who fail to identify the named defendants, are barred from subsequently litigating claims in federal court. *See Spruill*, 372 F.3d 218. Therefore, no matter the properness of the process, when an inmate's allegations "have been fully examined on the merits" and "at the highest level," they are exhausted. *Rinaldi v. United States*, 904 F.3d 257, 271 (3d Cir. 2018); *Camp v. Brennan*, 219 F.3d 279, 281 (3d Cir. 2000). Prison administration must also comply with the demands of the system. "[A]s soon as a prison fails to respond to a properly submitted grievance or appeal within the time limits prescribed by its own policies, it has made its administrative remedies unavailable and the prisoner has fully discharged the PLRA's exhaustion requirement." *Shifflett*, 934 F.3d at 365.

DOC Administrative Directive 804 ("DC-ADM 804") provides inmates with specific requirements for filing grievances and appeals to grievance responses in Pennsylvania corrections systems. (Doc. 17-7). DC-ADM 804 provides a three-tiered grievance system that serves as an inmate's administrative remedy: (1) an initial review by a Grievance Officer; (2) an appeal to the Facility Manager or designee; and (3) an appeal to the SOGIA for final review. (Doc. 17-7, at 11-43).

11

An inmate who has been personally affected by a DOC or facility action or policy is permitted to submit a grievance or appeal pursuant to DC-ADM 804. (Doc. 17-7, at 10). A grievance must be submitted in writing, using the grievance form available on all housing units or blocks, within fifteen (15) working days after the events noted in the grievance. (Doc. 17-7, at 11). A grievance must include the following: a statement of facts relevant to the claim including the date and approximate time and location of the event(s) giving rise to the grievance; the identity of any individuals who were directly involved in the event(s); any claims the inmate wishes to make concerning violations of DOC directives, regulations, court orders, or other laws; and any compensation or legal relief desired. (Doc. 17-7, at 19). Upon receipt, the Facility Grievance Coordinator assigns each grievance (even a rejected grievance) a tracking number and enters it into the Automated Inmate Grievance Tracking System. (Doc. 17-7, at 16-17).

If an inmate is dissatisfied with the initial response, he or she may appeal that decision to the Facility Manager. (Doc. 17-7, at 21). The Facility Manager then provides a written response to the grievance. (Doc. 17-7, at 22). The Facility Manager may uphold the response, uphold the inmate, dismiss the grievance (either as untimely or on the merits), or uphold in part and deny in part. (Doc. 17-7, at 22-23). The Facility Manager may also remand the Initial Review Response for further investigation or consideration. (Doc. 17-7, at 23). If an inmate is not satisfied with the decision of the Facility Manager, he or she may submit an appeal to the Secretary's Office of Inmate Grievances and Appeals. (Doc. 17-7, at 24). Only issues raised in both the original grievance and the appeal to the Facility Manager may be appealed to this level. (Doc. 17-7, at 24). That appeal must include the original grievance, the Initial Response Review, the appeal to the Facility Manager, the Facility Manager's response, and the appeal

12

to final review with any exhibits. (Doc. 17-7, at 24-26). The SOIGA then may uphold the response, dismiss, or uphold in part and deny in part. (Doc. 17-7, at 27-28). An inmate has not exhausted the grievance procedure unless a grievance is properly appealed to the SOIGA. (Doc. 17-7, at 28-29).

Jones filed suit against Defendants for allowing an unidentified inmate to attack him on March 20, 2021, in violation of his First and Eighth Amendment rights. (Doc. 1, at 4). At SCI-Benner Township, Jones filed one grievance between March 20, 2021, and April 14, 2021—inmate grievance number 923078. (Doc. 17-11). According to the record, prior to submitting the grievance, Jones spoke to both Ms. Rossman and Ms. Learn. (Doc. 17-11, at 2). Pursuant to DC-ADM 804, Jones submitted his grievance in writing using the form available form, within fifteen (15) working days after the events noted in the grievance. (Doc. 17-11, at 2). In grievance number 923078, Jones sought to complete an inmate program, stating:

> I am writing a grievance on SCI-Benner for the cause of not allowing me to finish my program Therapeutic Community ("TC"). I have asked to complete my programs on several occasions through the form of DC-135A (request form). Ms. Burke stated that this was a clinical assessment made based on my presentation while in the program, there is a co-occurring disorders TC program that addresses mental health and ADD. I also was told that I was not mentally stable to complete TC which is by law I was ordered to complete. I was discriminated against, prejudice intent was used, I was fastidiously selective upon. This was an unprofessional act made by staff. I was threatened by miss Rossman in lunch she stated: 'You will be given one additional opportunity to complete (ADD & TC) at this facility. If you are unable to do you will be re-evaluated.' I am disgusted at the hypocrisy of those who seek justice by embracing injustice. People should be punished for the things they commit, not for what staff want to hold them responsible for. If you take a look at records, it will show that ever since I was kicked out of TC for no reason, with no write-up, I have been going downward ever since. When the staff do not have to obey the rules, there is no rules. When the staff discriminates there is no justice. This system should be governed to help substantially and strengthen an inmate in: National Ethical Standards. However, I do wish to

13

floe a class action 1983 law suit as well as ADA Action 1973 suite in the near future. I also wish to complete my program as my relief.

(Doc. 17-11, at 2-3).

Grievance number 923078 was received by the SCI-Benner Township Facility Grievance Coordinator and processed on April 12, 2021. (Doc. 17-11, at 2). Based on the record, the initial response review was completed. (Doc. 17-6). The record reflects that Jones did not appeal the initial denial of grievance number 923078. (Doc. 17-6).

Jones has failed to exhaust the administrative process set forth in DC-ADM 804, as he has not appealed either grievance number 923078, or any of his grievances, to SOIGA. (Doc. 17-6, at 2). Jones's other grievances are unrelated to the claims at issue as they relate to his account, refunds, program completions, showers, and HA block issues. (Doc. 17-10; Doc. 17-11; Doc. 17-12; Doc. 17-13; Doc. 17-14). Furthermore, it is apparent from the record that none of Jones's grievances were fully examined on the merits by the highest level of administrative review. (Doc. 17-6, at 2). Thus, Jones has not exhausted his administrative remedies pursuant to the PLRA because he has not filed any inmate grievances related to his underlying claims, nor appealed any grievance to SOIGA. (Doc. 17-6); *see Brown v. Sprenkle, 827 F. App'x 229, 232 (3d Cir. 2020)* (affirming District Court's granting of Defendant's summary judgment where prisoner failed to exhaust his administrative remedies, as required by the PLRA).

In addition, to the extent that Jones attempts to raise a claim that C.O. Smitty filed a false misconduct report, regarding misconduct number D568762, the Court finds that Jones has not exhausted administrative remedies.

Pursuant to DOC policy, DC-ADM 804, Section 1, a grievance related to inmate discipline/misconduct procedures will not be addressed through the

14

Inmate Grievance process and must be addressed through policy DC-ADM 801, 'Inmate Discipline'. Under DC-ADM 801, "the inmate may appeal the informal resolution process." The appeal process is outlined in Section 5 and "requires the inmate to complete three levels of appeal." The first level of appeal is to the Program Review Committee ("PRC") "for initial review within 15 calendar days of the hearing or informal resolution." Next, the inmate "may appeal the PRC's decision to the institution's Facility Manager within 7 calendar days of receipt of the written decision by the PRC." The "final level of appeal is to the Chief Hearing Examiner within 7 calendar days of receipt of the Facility Manager's decision."

*Zamichieli v. DelBalso*, No. CV 3:17-1898, 2022 WL 821170, at *8 (M.D. Pa. Mar. 17, 2022), *appeal dismissed sub nom. Zamichieli*, No. 22-1655, 2022 WL 10328794 (3d Cir. July 8, 2022) (citations omitted).

As discussed *supra*, C.O. Smitty filed inmate misconduct number D568762 against Jones on April 14, 2021, for "threatening an employee or their family with bodily harm," "refusing to obey an order," and "presence in an unauthorized area." (Doc. 17-8, at 3). On April 15, 2021, a hearing examiner held a disciplinary hearing regarding misconduct number D568762. (Doc. 17-8, at 2). Jones pled guilty to the "refusing to obey an order" and "presence in an unauthorized area" charges, and not guilty to the charge of threatening an employee or other family with bodily harm. (Doc. 17-8, at 2). The hearing examiner found Jones guilty of the two misconduct charges to which he pled guilty and dismissed the charge to which he pled not guilty. (Doc. 17-8, at 2). As shown by Jones's grievance history that was provided by Defendants in support of the motion for summary judgment, Jones did not appeal the hearing examiner's determination, nor did he file a grievance concerning misconduct number D568762. (Doc. 17-6, at 2; Doc. 17-9, at 2). Thus, the record is clear that Jones did not exhaust his administrative remedies regarding misconduct number D568762 prior to filing the instant action.

15

Jones does not refute the fact that he did not exhaust administrative remedies. Instead, in his brief in opposition to Defendants' motion for summary judgment, Jones attempts to argue that exhaustion is not relevant as the "grievance policy was not authorized to address legal matters of a court of law." (Doc. 23, at 3) (citing *McCray*, 872 A.2d at 1132). In *McCray*, the Pennsylvania Supreme Court determined that the inmate grievance system was not the appropriate procedural vehicle for inmates who seek to have time credited toward their criminal system. *McCray*, 872 A.2d at 1132. Specifically, the court found:

> The Department is disingenuous in asserting that this is the appropriate mechanism to entertain a legal challenge to an application for credit for time served. If the Department has no authority to correct or clarify a sentence, as it claims, then it is incongruous to contend that its internal grievance system is an available remedy.

> *McCray*, 872 A.2d at 1132.

Jones's reliance on *McCray* is misplaced. Jones raises legal claims relating to the conditions of his confinement and does not raise claims seeking to have time credited toward his criminal sentence. (Doc. 1, at 4). The *McCray* decision is not applicable here, and Jones has not exhausted administrative remedies as mandated by DC-ADM 801 and DC-ADM 804.

Accordingly, Defendants' motion for summary judgment on the grounds of exhaustion will be **GRANTED.**[3]

### 2.    Official Capacity Claims

Although the Court finds that Defendants are entitled to summary judgment as Jones has failed to exhaust administrative remedies, the Court will nevertheless address Defendants'

---

[3] Jones does not advance any other arguments in opposition to Defendants' arguments concerning Jones's failure to exhaust his administrative remedies. (Doc. 23).

remaining arguments. Jones has brought this civil rights action under 42 U.S.C. § 1983. (Doc.

1.) Section 1983 provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

Thus, "Section 1983 imposes civil liability upon any person who, acting under the color of

state law, deprives another individual of any rights, privileges, or immunities secured by the

Constitution or laws of the United States." *See Shuman v. Penn Manor Sch. Dist.*, 422 F.3d 141,

146 (3d Cir. 2005) (citation omitted).

However, § 1983 "does not create any new substantive rights but instead provides a

remedy for the violation of a federal constitutional or statutory right." *See Shuman*, 422 F.3d

at 146 (citation omitted). Thus, in order for a plaintiff to state a claim under Section 1983, he

must allege "a deprivation of a federally protected right and that this deprivation was

committed by [a person] acting under color of state law." *See Woloszyn v. Cty. of Lawrence*, 396

F.3d 314, 319 (3d Cir. 2005) (citation and internal quotation marks omitted).

Jones has sued Defendants in both their individual and official capacities. (Doc. 1, at

5) As relief, Jones seeks "compensatory and punitive damages, criminal charges filed[,] lose

of the[ir] jobs and a[n] investigat[ion]." (Doc. 1, at 5). Defendants submit that the Eleventh

Amendment to the United States Constitution bars Jones's civil rights claims against them in

their official capacities because they do not qualify as "persons" under Section 1983. (Doc.

18, at 7).

The Eleventh Amendment to the United States Constitution precludes private individuals from bringing suit against a state, or one of its agencies, or in federal court. U.S. Const. Amend. XI; *State School and Hospital v. Halderman,* 465 U.S. 89 (1984). Eleventh Amendment immunity "is a jurisdictional bar which deprives federal courts of subject matter jurisdiction," and may be properly considered by way of a motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure. *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 694 (3d Cir. 1996). "This jurisdictional bar applies regardless of the nature of the relief sought," including suits brought by plaintiffs in equity. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-01 (1984) (citing *Missouri v. Fiske,* 290 U.S. 18, 27 (1933)).

While Defendants quite "literally are persons[,]" a suit for monetary damages brought against a state official in his official capacity is not a suit against that official; it is a suit against that official's office. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Allen v. New Jersey State Police*, 974 F.3d 497, 506 (3d Cir. 2020). This is no different from a suit against the State itself, which is barred by the Eleventh Amendment unless (1) the State has waived its immunity or (2) Congress has exercised its power under § 5 of the Fourteenth Amendment to override that immunity. *See Will*, 491 U.S. at 66, 70-71.

The Court finds that the two exceptions to Eleventh Amendment immunity do not apply here. As explained by the United States Court of Appeals for the Third Circuit, "Pennsylvania has not waived its sovereign immunity defense in federal court[,]" and "Congress did not abrogate Eleventh Amendment immunity via § 1983[.]" *See Downey v. Pennsylvania Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020) (citation omitted); *see also* 42 Pa. Stat. C.S.A. § 8521(b) (stating that "[n]othing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the

Eleventh Amendment to the Constitution of the United States"); *Quern v. Jordan*, 440 U.S. 332, 345 (1979) (concluding that the history and language of 42 U.S.C. § 1983 establish that Congress did not intend to make the States liable under that statute). Thus, to the extent that Defendants seek dismissal of Jones's § 1983 claims for monetary damages against Defendants in their official capacities, the Court concludes that Defendants are entitled to summary judgment. *See Will*, 491 U.S. at 61-71.

To the extent, however, that Defendants seek dismissal of Jones's § 1983 claims for prospective injunctive relief, the Court concludes that Defendants are not entitled to summary judgment on this basis. When a plaintiff sues state officials in their official capacities for prospective injunctive relief under § 1983, Eleventh Amendment immunity is not extended to those officials. *See Will*, 491 U.S. at 71 n.10 (noting that "[o]f course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State'" (citations omitted)); *Iles v. de Jongh*, 638 F.3d 169, 177 (3d Cir. 2011) (explaining that a state employee may be sued in his official capacity, not "for all injunctive relief," but rather, only for "*prospective* injunctive relief," because official-capacity claims for prospective injunctive relief are not treated as actions against the State (citing *Will*, 491 U.S. at 71 n.10) (emphasis in original)).

Accordingly, for all of these reasons, the Court will grant Defendants' motion to the extent that they seek summary judgment on Jones's § 1983 official-capacity claims against them for monetary damages. The Court will deny, however, Defendants' motion to the extent that they seek summary judgment on Jones's § 1983 official-capacity claims against Defendants for prospective injunctive relief.

19

3.      **Eighth Amendment Claim**

In the complaint, Jones alleges that Defendants denied him medical care in violation of the Eighth Amendment for nearly two weeks after he was attacked by another inmate. (Doc. 1, at 4). Moving for summary judgment, Defendants argue that they are not personally involved in the medical care of Jones because they are correctional staff and not medical personnel and there is no evidence that Defendants knew that Jones was not under the care of medical professionals from March 20, 2021, until April 14, 2021. (Doc. 18, at 9). Defendants also argue that the record contradicts Jones's allegations that he was denied all medical care during the time period in question. (Doc. 18, at 10). In opposition, Jones claims that the medical report documents Defendants submitted are irrelevant to this case because the documents are not about the alleged injuries he sustained that led to his litigation. (Doc. 23, at 3). However, the Court finds that these documents are germane to determining whether Jones was deprived of all medical care or denied access to medical care during the relevant time period, as required to violate the Eighth Amendment. *See Turner v. Wetzel*, No. 21-2879, 2022 WL 3572693, at *2 (3d Cir. Aug. 19, 2022) ("Prison officials violate the Eighth Amendment when they act deliberately indifferent to a prisoner's serious medical needs by intentionally denying or delaying access to medical care or interfering with the treatment once prescribed") (citing *Pearson,* 850 F.3d 526 at 534).

"The Eighth Amendment, made applicable to the States through the Fourteenth Amendment, prohibits the infliction of 'cruel and unusual punishments.'" *Glossip v. Gross*, 576 U.S. 863, 876 (2015). In order "[t]o determine whether prison officials have violated the Eighth Amendment, [courts] apply a two-prong test: (1) the deprivation must be 'objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal

20

civilized measure of life's necessities'; and (2) the prison official must have been 'deliberate[ly] indifferen[t] to inmate health or safety.'" *See Porter v. Pennsylvania Dep't of Corr.*, 974 F.3d 431, 441 (3d Cir. 2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

Regarding the first prong, life's necessities include food, clothing, shelter, medical care, and reasonable safety. *See Tillman v. Lebanon Cty. Corr. Facility*, 221 F.3d 410, 418 (3d Cir. 2000) (stating that "when the government takes a person into custody against his or her will, it assumes responsibility for satisfying basic human needs such as food, clothing, shelter, medical care, and reasonable safety" (citation omitted)). Regarding the second prong, a prison official does not act with deliberate indifference "unless the official knows of and disregards an excessive risk to inmate health or safety"—that is, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001) (explaining that the official "must actually be aware of" the existence of the substantial risk and that "it is not sufficient that the official should have been aware" (citing *Farmer*, at 837-38)).

In reviewing the instant matter, the Court finds that Jones has not presented sufficient evidence from which a reasonable jury could find that the Defendants acted with deliberate indifference to Jones's medical needs. *See Pearson*, 850 F.3d 526 at 543 ("a non-medical prison official" cannot "be charge[d] with the Eighth Amendment scienter requirement of deliberate indifference" when the "prisoner is under the care of medical experts" and the official does not have "a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner."); *Spruill*, 372 F.3d at 236. Jones alleges that he was denied medical treatment by Sgt. Boone after he

was attacked by another inmate and that Sgt. Boone threatened him if he were to go to medical. (Doc. 1, at 4). Contrary to Jones's allegations, the record reveals that Jones received medical care from medical professionals at least two to three times a day between March 20, 2021, and April 14, 2021, during different DOC staff shifts. (Doc. 17-2; Doc. 17-3); *see Harris v. Hyde*, 709 F. App'x 144 (3d Cir. 2017) (non-medical prison official was not deliberately indifferent to inmate's serious medical need where he was being treated by a prison doctor). To the extent Jones complains that he was issued a false, retaliatory misconduct report, "[a] false misconduct charge, standing alone, does not qualify as an Eighth Amendment violation." *Hagan v. Chambers*, No. 1:08-CV-1766, 2010 WL 4812973, at *15 (M.D. Pa. Nov. 19, 2010). Jones does not allege facts from which it can reasonably be inferred that he was deprived of the minimal civilized measure of life's necessities. Thus, he does not satisfy the objective prong of an Eighth Amendment claim.

Second, the Court finds that the record does not reflect a genuine dispute as to the level of personal involvement necessary to support a claim of deliberate indifference. *Flowers v. Francoise*, No. 22-1077, 2022 WL 2447899, at *2 (3d Cir. July 6, 2022). Defendants in civil rights actions "must have personal involvement in the alleged wrongs to be liable and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) (quotation marks and citations omitted). "Personal involvement can be shown through allegations of personal direction or actual knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Jones has failed to allege any personal involvement by Defendants in the alleged denial of medical care beyond his unsupported allegation that Defendants denied him medical care for nearly two weeks after he was attacked by an inmate. (Doc. 1, at 4). The

undisputed record demonstrates that Jones had access to medical care and mere allegations of medical malpractice or disagreement as to the proper medical treatment are insufficient to support an Eighth Amendment claim. *Flowers*, 2022 WL 2447899, at *2 (concluding District Court properly granted summary judgement in favor of defendants on inmate's Eighth Amendment claim as inmate received medical treatment but disagreed as to the proper course of medical treatment).

For these reasons, Defendants' motion for summary judgment will be **GRANTED** on Jones's Eight Amendment claims.

### 4.      First Amendment Retaliation Claim

Jones also contends Defendants violated his rights under the First Amendment, which "forbids prison official from retaliating against prisoners for exercising rights of free speech." (Doc. 1, at 5). Specifically, Jones maintains:

> This whole thing started by me asking for an grievance to file on Sgt. Boone [and C.O.] Smitty, then I was retaliated against for constitutionally protected activity. I was denied medical treatment by Sgt. Boone, when I was attacked by another inmate that C/O Smitty and Sgt. Boone open my cell door and allow this inmate Joe Doe to attack me while me and m[y] cellie w[ere] lying down sleeping in my bed at the bottom bunk in FB-237, it was about 6:00 am t 7:00 am in view of the video footage the jail ha[s]. The real reason this happen[ed] to me is they claimed that I disrespected his girlfriend RN Nurse Stallman. I was set up and sent to the RHU, I was threat[ened] by Sgt. Boone to not file grievance or go to medical, which he had other inmates said to me ["]Don't go medical or something else is going to happen to you.["] And I have witnesses. The CO use or had inmate use force against me.

(Doc. 1, at 4).

Moving for summary judgment on Jones's retaliation claim, Defendants argue that (1) disrespecting another person is not constitutionally protected conduct; (2) Jones cannot

establish a retaliatory motive; and (3) Jones cannot establish that any adverse action was taken against him.[4] (Doc. 18, at 10-15).

It is well settled that retaliation for the exercise of a constitutionally protected right may violate the protections of the First Amendment, which is actionable under Section 1983. *Rauser v. Horn*, 241 F.3d 330 (3d Cir. 2001); *White v. Napoleon*, 897 F.2d 103, 112 (3d Cir. 1990). However, merely alleged retaliation is insufficient. To prevail on a retaliation claim, a plaintiff must show three things: (1) the conduct which led to the alleged retaliation was constitutionally protected; (2) that he was subjected to adverse actions by a state actor (here, the prison officials); and (3) the protected activity was a substantial motivating factor in the state actor's decision to take the adverse action. *See Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274, 287(1977); *Anderson v. Davila*, 125 F.3d 148, 163 (3d Cir.1997).

First, Jones must establish that the conduct which led to the alleged retaliation, filing a prison grievance disrespecting Nurse Stallman, was constitutionally protected. *See Dockery v. Legget*, No. CIV. 09-732, 2012 WL 2872554, at *14 (W.D. Pa. May 22, 2012), *report and recommendation adopted*, No. CIV.A. 09-732, (W.D. Pa. July 12, 2012), *aff'd sub nom. Dockery v. Beard*, 509 F. App'x 107 (3d Cir. 2013). A prisoner-plaintiff in a retaliation case must prove that the conduct which led to the alleged retaliation was constitutionally protected. *Rauser*, 241 F.3d at 333. Here, Defendants concede that filing a prison grievance is constitutionally protected conduct; however, Defendants argue that to the extent the alleged protected conduct is disrespecting another person, to present date, no court has held that such action is protected conduct. (Doc. 18, at 11).

---

[4] Jones does not raise any relevant facts or advance any other arguments in opposition to Defendants' motion for summary judgement on his retaliation claim. (Doc. 23).

Nothing in the record before the Court establishes that disrespecting another person is constitutionally protected activity. However, assuming disrespecting another person is protected activity, the Court finds that Jones has not established adverse action in the form of a misconduct charge, denial of medical care, or the inmate attack taken against Jones, as required in a First Amendment retaliation suit. *See Rauser*, 241 F.3d at 333. (prisoner satisfied this requirement by demonstrating he suffered some "adverse action" at the hands of prison officials; prisoner satisfies this requirement by demonstrating that the action taken by officials was sufficient to deter a person of ordinary firmness from exercising his constitutional rights). Defendants argue that the inmate misconduct cannot be deemed as adverse action for Jones's retaliation claim because the record establishes that the hearing examiner found Jones guilty of the misconduct charges after Jones testified at a disciplinary hearing to the alleged falsified misconduct. (Doc. 18, at 13). Defendants argue that such evidence qualifies as a "quantum of evidence" sufficient for the granting of summary judgment. (Doc. 18, at 12-13).

Prison officials may prevail on a retaliation claim "by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Rauser*, 241 F.3d at 334. Here, C.O. Smitty filed inmate misconduct number D568762 against Jones on April 14, 2021. (Doc. 17-8, at 3). In the report, C.O. Smitty charges Jones with three class 1 charges, including: #15, threatening an employee or their family with bodily harm, #35, refusing to obey an order, and #43 presence in an unauthorized area. (Doc. 17-8, at 3). The action was reviewed and approved by the ranking corrections officer on duty. (Doc. 17-8, at 3-4). Afterward, Jones was placed in pre-hearing confinement. (Doc. 17-8, at 3). Jones was notified of the misconduct report and opted to have a disciplinary hearing but waived his right to a 24 hour-notice. (Doc. 17-8, at 4). A video

25

hearing was held on April 15, 2021, before hearing examiner J. Schneck ("Schneck"). (Doc. 17-8, at 2). At the hearing, Jones had an opportunity to challenge the misconduct through his testimony at the video disciplinary hearing before Schneck. (Doc. 17-8, at 2). The hearing examiner considered the misconduct report written by C.O. Smitty and found Jones guilty of the inmate misconduct charges to which he plead guilty and sentenced Jones to thirty (30) days in disciplinary custody and loss of job. (Doc. 17-8, at 2).

Where Jones was found guilty of the charges in a purportedly retaliatory misconduct report after a disciplinary hearing, the finding of guilt is considered strong evidence that the misconduct report was issued for a legitimate penological reason. *Hudson v. Carberry,* No. 3:15-CV-1282, 2018 WL 6591812, at *9 (M.D. Pa. Dec. 14, 2018). Furthermore, the Court must consider that the task of prison administrators and staff is difficult, and the decisions of prison officials require deference, particularly where prison security is concerned. *Drumgo v. Reese,* No. 3:20-CV-02434, 2022 WL 4295442, at *13 (M.D. Pa. May 20, 2022), report and recommendation adopted, No. 3:20-CV-02434, 2022 WL 3045310 (M.D. Pa. Aug. 2, 2022); (citing *Rauser,* 241 F.3d at 334). When "evaluating the legitimacy of a misconduct report, [the Court] considers 'the quantum of evidence of the misconduct to determine whether the prison officials' decision to discipline an inmate for his violations of prison policy was within the broad discretion [the Court] must afford them.'" *Williams v. Folino,* 664 F. App'x 144, 148 (3d Cir. 2016) (quoting *Watson v. Rozum,* 834 F.3d 417, 422, 426 (3d Cir. 2016)).

Based on the undisputed material facts in the record before it, the Court finds that the finding of guilty on the misconduct charge, combined with a meaningful opportunity to challenge the misconduct through testimony at a disciplinary hearing and a guilty plea, establishes a "quantum of evidence" of misconduct sufficient to warrant summary judgment.

*See Rivera v. McCoy,* 729 F. App'x 142, 144 (3d Cir. 2018) (concluding defendants were entitled to summary judgment and there was a sufficient quantum of evidence where hearing examiner independently concluded that corrections officer's account was more believable than inmate's and inmate did not call any witnesses for the hearing and none of the unsworn witness declarations attached to his complaint indicated that the authors had personally observed the alleged misconduct). Here, the misconduct conviction is supported by evidence relied on in concluding that Jones was guilty. *Williams,* 664 F. App'x at 149. ("A finding of misconduct must include "a meaningful written statement of the evidence relied on and the reasons for the action take.") (quoting *Dyson v. Kocik,* 689 F.2d 466, 467 (3d Cir. 1982)).

Given the quantum of evidence supporting the findings of guilty on misconduct number D568762, the Court concludes that the issuance of misconduct number D568762 was reasonably related to legitimate penological interest, namely that Jones disobeyed prison rules, and within the broad discretion afforded prison officials in addressing violations of prison policies. *See Rivera,* 729 F. App'x at 144; *see also Quiero v. Ott,* 799 F. App'x 144, 146 (3d Cir. 2020) (determining prisoner's retaliation claim failed because defendants averred that he would have made the same decision, absent protected conduct, for reasons related to a legitimate penological interest, namely that prisoner disobeyed prison rule); *see Watson,* 834 F.3d at 426 (explaining "same decision defense"). Additionally, regarding Jones's allegation that he was deprived of medical care, as discussed *supra,* the record indicates that Jones was not denied medical care during the relevant time period and the complaint does not contain any allegations that Defendants unreasonably delayed or prevented Jones from receiving the recommended medical treatment. (Doc. 17, ¶ 2; Doc. 17-2; Doc. 17-3). There is no genuine issue of material fact as to whether Defendants acted with deliberate indifference to Jones's

medical needs or delayed access to or interfered with medical treatment as required to prevail on Jones's Eighth Amendment claim. *See Brown v. Waxford*, No. 3:19-CV-00839, 2022 WL 2759064, at \*7 (M.D. Pa. July 14, 2022) (concluding plaintiff's Eighth Amendment deliberate indifference claim could not withstand Rule 56 scrutiny where plaintiff was receiving prompt and continued medical care from medical professionals). As such, Jones's Eighth Amendment retaliation claim cannot constitute adverse action, as required to state a claim for retaliation. *See Romero v. Ahsan*, 827 F. App'x 222, 227- 228 (3d Cir. 2020) (concluding that District Court properly entered summary judgment on plaintiff's First Amendment retaliation claim alleging that physician denied prisoner knee surgery as a result of prisoner filing grievance, where District Court concluded that plaintiff's treatment reflected professional medical judgment that surgery was not appropriate and entered summary judgment in favor of defendant on plaintiff's Eighth Amendment claim). Furthermore, nothing before the Court, other than Jones's unsupported allegations, connects Jones's disrespecting Nurse Stallman with the alleged inmate attack. *See Dockery*, 509 F. App'x at 111.

For the foregoing reasons, Defendants will be **GRANTED** summary judgment on Jones's First Amendment claim.[5]

---

[5] As Defendants note, when a plaintiff responds to a defendant's summary judgment motion but fails to address the substance of any challenge to particular claims, that failure "'constitutes an abandonment of those causes of action and essentially acts as a waiver of these issues.'" *Campbell v. Jefferson Univ. Physicians*, 22 F. Supp. 3d 478, 487 (E.D. Pa. 2014) (quoting *Skirpan v. Pinnacle Health Hosps.*, No. 07-1703, 2010 WL 3632536, at \*17 (M.D. Pa. Apr. 10, 2010)). Here, in either of his briefs, Jones fails to identify any relevant facts or legal arguments in opposition to Defendants' legal challenges asserted against the First and Eighth Amendment and official capacity claims. Accordingly, such claims have been abandoned. (Doc. 23; Doc. 26).

###### 5.     Jones's Remaining Arguments

As stated in his brief in opposition, Jones argues that the prior Pennsylvania Commonwealth Court decision, *Commonwealth ex rel. Vance*, 2008 WL 9406009, bars any entry of judgment on behalf of Defendants in this case under the doctrine of *res judicata*. (Doc. 23, at 1-2). Defendants argue that Jones's claim fails as a matter of law because *Commonwealth ex rel. Vance* involves different parties who are not in privity, and different causes of action than the current case before the Court. (Doc. 24, at 4); *Commonwealth ex rel. Vance*, 2008 WL 9406009, at *1.

The preclusive effect of a state court judgment is determined by the law of that state. *Jackson v. SCI Huntingdon Prison Offs.,* No. 3:18-CV-01290, 2022 WL 16836623, at *4 (M.D. Pa. Nov. 9, 2022). Under Pennsylvania law, a claim is barred by *res judicata* if there is "(1) identity of issues; (2) identity in the cause of action; (3) identity of persons and parties to the action; and (4) identity of the capacity of the parties suing or being sued." *Jackson*, 2022 WL 16836623, at *4. Identity of parties is established if the parties to the previous lawsuit or their privies are named as parties in the current suit. *Jackson*, 2022 WL 16836623, at *4. Privity between parties is "mutual or successive relationships to the same right of property or such an identification of interest of one person with another as to represent the same legal right." *Jackson*, 2022 WL 16836623, at *4.

As Defendants note in their reply brief, Jones's argument fails as a matter of law because there is no identity of claims and parties as required to preclude judgment. *See Jackson*, 2022 WL 16836623, at *4; (Doc. 24, at 3-4). First, neither Jones nor any of the named Defendants were parties in *Commonwealth ex rel. Vance*, as to establish privity between the parties in the present case and the parties in the state court litigation. *See Jackson*, 2022 WL

16836623, at *4. Further, the causes of action are not identical. In *Commonwealth ex rel. Vance*, the plaintiff filed a petition for review in the Commonwealth Court of Pennsylvania's original jurisdiction seeking to challenge "an amendment to a policy statement issued by the Department [in 2005] that restricted existing inmate access to pornographic materials or those involving nudity." *Commonwealth ex rel. Vance*, 2008 WL 9406009, at *1. In this case, Jones brings denial of medical care and retaliation claims against Defendants pursuant to 42 U.S.C. § 1983. (Doc. 1). None of Jones's claims were raised in the aforementioned proceedings and dismissed on their merits as to establish identity of claims and causes of action. *See Jackson*, 2022 WL 16836623, at *4. As Jones has failed to establish two of the three requisite elements for *res judicata* (identical parties and causes of action), *res judicata* cannot bar the entry of judgment on behalf of Defendants. *See Houser v. Pennsylvania Dep't of Corr.*, No. 20-2430, 2022 WL 5434311, at *1 (3d Cir. Oct. 7, 2022) ("The party asserting claim preclusion has the burden of proving all the elements"). Accordingly, the *Commonwealth ex rel. Vance* opinion cited by Jones is irrelevant to determining the issues before the Court.

## IV.  CONCLUSION

Based on the foregoing, Defendants' motion for summary judgment is **GRANTED** and Jones's motion for summary judgment is **DENIED**. (Doc. 16; Doc. 22).

An appropriate Order follows.


Dated: March 17, 2023                    *s/ Karoline Mehalchick*
                                         **KAROLINE MEHALCHICK**
                                         **Chief United States Magistrate Judge**